

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed December 1, 2015**

_____
**United States Bankruptcy Judge**
_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| In re: | § § | |
| POSITRON CORPORATION, | § § | Case No.: 15-50205-RLJ-11 |
| Alleged Debtor. | § § § | |

### MEMORANDUM OPINION AND ORDER

In this involuntary bankruptcy case, Positron Corporation, the alleged debtor, moves for dismissal or, alternatively, to transfer venue to the bankruptcy court for the Northern District of Illinois. Venue is proper in Texas, and within this district, the Northern District, as Positron is a Texas corporation that has maintained operations in the Northern District, specifically Lubbock, Texas. 28 U.S.C. § 1408 (proper venue for a bankruptcy case includes the district of the alleged debtor's domicile or residence, principal place of business, or principal place of assets).

Dismissal under Rule 12(b)(3) of the Federal Rules of Civil Procedure for improper venue, as alleged, is thus not available.

The question, then, is whether the case should be transferred to the Northern District of Illinois. *See* Fed. R. Bankr. P. 1014 (the court may transfer a case that is filed in a proper district to another district if the court determines that the transfer is in the interest of justice or for the convenience of the parties). Section 1412 of title 28 addresses a change of venue for a bankruptcy case and, like Rule 1014, states that the venue of the case may be transferred "in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412.[1] Though satisfaction of either principle is sufficient to support a transfer, "[t]he decision of whether to transfer venue is within the court's discretion based on an individualized case-by-case analysis of convenience and fairness." *In re Enron Corp.*, 274 B.R. 327, 342 (Bankr. S.D.N.Y. 2002) (citations omitted). The movant typically bears the burden of showing, by a preponderance of the evidence, that the transfer is warranted. *Ries v. Ardinger (In re Adkins Supply, Inc.)*, No. 14-01000, 2015 WL 1498856, at *5 (Bankr. N.D. Tex. Mar. 27, 2015) (citations omitted). But here, a contested involuntary proceeding that has been filed in a court of proper venue, it is, really, for the Court to decide, within its discretion, where the trial on the involuntary petition—and if relief is granted, where the bankruptcy case—should proceed. Fed. R. Bankr. P. 1014(b); *see also In re Caesars Entm't Operating Co., Inc.*, No. 15-10047, 2015 WL 495259, at *5 (Bankr. D. Del. Feb. 2, 2015).

---

[1] Section 1404 of title 28 addresses change of venue in general civil cases. As § 1412 is a special venue statute for title 11 proceedings, it controls and § 1404 supplements it. MICHAEL C. SMITH, *O'CONNOR'S FEDERAL RULES * CIVIL TRIALS* 2-G § 4.1 (2014). By "the text of the two statutes, the two considerations—the convenience of parties (and witnesses) and the interest of justice—are stated in the conjunctive under § 1404 but in the disjunctive under § 1412. This implies that § 1412 [is] more generous." *Ries v. Ardinger (In re Adkins Supply, Inc.)*, No. 14-01000, 2015 WL 1498856, at *6 (Bankr. N.D. Tex. Mar. 27, 2015).

A.

Courts typically review the following factors in assessing the interests of justice:

> (a) efficiency and economics of estate administration; (b) presumption in favor of the "home court"; (c) judicial economy and efficiency; (d) fairness and the ability to receive a fair trial; (e) the state's interest in having local controversies decided within its borders; and (f) plaintiff's original choice of forum.

*Ries*, 2015 WL 1498856, at *5 (citations omitted). As for determining the venue that is more convenient for the parties, courts often examine the following factors:

> (a) location and proximity of the parties; (b) ease of access to necessary proof; (c) convenience of witnesses, including their location and proximity; (d) location of the assets, including books and records; (e) availability of subpoena power for the unwilling witness; and (f) expenses related to obtaining witnesses.

*Id.* (citations omitted). In the context of the trial of an opposed involuntary bankruptcy case, the factors can be pared down to the following: the proximity of the petitioning creditors and all other creditors; the proximity of the debtor to the court; the proximity of potential witnesses; the location of the estate assets; and the economic administration of the estate to be potentially administered in bankruptcy. *See Caesars Entm't*, 2015 WL 495259, at *6.

B.

Positron is, to say the least, a troubled enterprise. It is generally described as a "nuclear medicine healthcare company specializing in the field of cardiac [p]ositron [e]mission [t]omography (PET) imaging." Positron's Ex. 1 at 5. In 2005, it entered into a joint venture with a Chinese company for the manufacturing of PET cameras to be sold to users such as hospitals and, in particular, cardiologists for use in diagnosing heart ailments. In 2011, it sold thirteen PET cameras and was the designated servicer under service contracts and warranties issued in connection with the PET cameras. Several problems beset the company, including the criminal

indictment and prosecution of its former chief executive officer for violations of federal securities laws. Positron and its former CEO were also named defendants in a civil action brought in 2014 by the Securities and Exchange Commission in the United States District Court for the Southern District of Florida; a permanent injunction and a civil penalty were assessed against Positron.

In 2012, Positron began the first stage of an ambitious, integrated business plan. It acquired another Texas company, Manhattan Isotope Technology, LLC (MIT), based in Lubbock, Texas. MIT was "the only commercial resource in the United States with practical knowledge and experience in all stages of strontium-82 (Sr-82) production"; Sr-82 is the radioactive material required for the scanning capabilities of the PET cameras. *Id*. at 7. To further secure its long-term commercial prospects, Positron and MIT planned to build and operate a "commercial high energy/high current cyclotron" that would produce a steady supply of radioisotopes for the ultimate production of Sr-82. *Id*. Positron was thus seeking to change its profile from that of a medical imaging device company to one that had the capability of providing all "key components of the cardiac PET supply chain" and therefore "offer an end-to-end solution for the nuclear cardiology market." *Id*. For many reasons not necessarily relevant to the venue question, this business plan has thus far failed. Positron has lost over $9 million in the past three years, including over $900,000 in the first six months of 2015. Positron has never operated at a profit. Apart from a few service contracts, Positron has no other ongoing business operations.

Positron presently has eleven employees: two in Westmont, Illinois; five in New York; two in Lubbock, Texas; one in Houston, Texas; and one in Tennessee.[2] One of the two in

---

[2] The annual aggregate payroll for the five employees in New York is $451,000; for the employees in Illinois and Texas, it is $172,500 and $168,750, respectively; and for the one in Tennessee, it is $73,000. Positron's Ex. 4.

Illinois is Corey Conn, who is the chief financial officer and is a member of the board of directors of Positron Corporation. The president and chairman of the board of Positron Corporation, Joe Oliverio, resides in and serves the company from Niagara, New York. Positron owns a building in Westmont, Illinois, where Mr. Conn and an assistant maintain offices. Positron intends to sell the building to raise funds to pay-off its major creditor, DX, LLC. The day-to-day management decisions, to the extent there are any, are made in Westmont; the accounting and bookkeeping services are likewise maintained there. The company's accountants and attorneys are in Chicago.

As stated, Mr. Oliverio resides in Niagara, New York. Though he is board chairman, he does not hold board meetings; he testified that he confers with other board members and with Mr. Conn by email.

The assets that are integral to Positron's business plan are located in Lubbock, Texas. MIT leases a warehouse facility where it maintains an inventory of radioactive material; it is also the location of various items of equipment that were purchased by MIT or Positron and are, ostensibly, held in the name of MIT. Positron is the sole shareholder of MIT.

The two employees *of Positron* in Lubbock are charged with maintaining and securing the radioactive material in conformance with state and federal laws and regulations. MIT holds the license for the handling of the radioactive material in the Lubbock facility. Lawrence Pitt, one of the two Lubbock employees, is a certified radiological safety officer. Pitt credibly testified that it would cost as much as $500,000 to close down the Lubbock facility and properly remove the material. Mr. Pitt and the other Lubbock employee are presently attempting to find other employment in light of Positron's dire financial prospects. Neither Positron nor MIT are licensed to maintain the material at any other location. Another major asset of MIT's is the so-

called Drug Master File (DMF). The DMF was described as the "recipe book" for the formula to Sr-82. Mr. Oliverio testified that this "cookbook" has significant value and that at least $3 million was invested in its development. The DMF is obviously critical to Positron's integrated business plan.

Positron presently has approximately $60,000 in its bank account and $200,000 on deposit with the Chinese joint venture that can be used to facilitate an acquisition and sale of a PET camera to a potential customer. It does not, however, presently hold a license to sell a foreign built PET camera in the United States. And it does not presently have available capital with which to otherwise implement its business plan.

Positron has numerous shareholders; it is described as a "penny stock" company. Its shareholders are located throughout the United States and in other parts of the world. Its largest shareholder by far is Cecil O'Brate. Mr. O'Brate resides in Garden City, Kansas, near Kansas City, Kansas. He is also the owner of DX, LLC, Positron's largest creditor and one of the petitioning creditors. DX, LLC is a Kansas limited liability company. Positron's debt to DX, LLC arises under a promissory note that DX, LLC acquired from a New Mexico bank and of which MIT is the maker and Positron is a guarantor.

According to Positron's accounts payable aging report, the vast majority of Positron's trade creditors are from Illinois, Indiana, New York, and Texas. Positron is also indebted to certain insiders of the company.

C.

Consideration of the convenience factors yields a mixed bag of conclusions. As stated, Illinois and Texas are two of the four states in which its creditors are principally located. Positron's attorneys and accountants, as well as certain insiders to whom it is indebted, are

mostly located in Illinois; the insider-creditors prefer the Illinois venue.[3] On the other hand, Positron's largest shareholder, Cecil O'Brate, and perhaps its largest creditor, DX, LLC, which is owned by O'Brate and is a petitioning creditor here, obviously prefer the Court's venue. As stated, O'Brate is from Kansas. An alleged debtor's venue choice is accorded some deference, but not to the same extent as is accorded a debtor. *See Caesars Entm't*, 2015 WL 495259, at *7 (explaining an *alleged debtor's* choice of venue is "more closely scrutinized" than a *debtor's* choice of forum).

The one tangible asset of Positron is an office condominium in Westmont, Illinois, where its CFO and his assistant apparently maintain an office. As stated above, the building is presently listed for sale.

According to Positron's counsel, its witnesses for trial of the involuntary petition would include Mr. Conn, Mr. Oliverio, and the former CEO, Mr. Rooney. It is suggested that Mr. Rooney's ability to travel to testify may be constrained. (He is apparently confined to a halfway house in the Chicago area.) A trial in Lubbock, Texas, as compared to a trial in Illinois, would constitute a greater hardship for the company. One of the other petitioning creditors, Moress, LLC, is an Indiana limited liability company, which is obviously closer to Illinois, but it prefers Texas. And petitioning creditors Jason and Suzanne Kitten reside in Texas. (The testimony was confused on whether they presently live in Lubbock, Texas, or in College Station, Texas.) Positron challenges the validity of the claims asserted by the Kittens and Moress, LLC.

One other interested party, J&S&G Properties, LLC, formally responded to Positron's motion to transfer venue. By its response, J&S&G represents that it is a Texas limited liability company and is the owner and thus the landlord of the warehouse in Lubbock that is under lease

---

[3] Positron uses a law firm from New York, as well.

to MIT. Submitting further that it has only recently learned that radioactive materials are stored at its warehouse, J&S&G is concerned about this circumstance and favors the Court's venue.

D.

There are two aspects about this case that cause the Court to conclude that venue should remain with the Court, in Lubbock, Texas. First, as a practical matter, there are no significant ongoing business operations, and there are no clear prospects for such. Positron's "business" consists of servicing service contracts for a few PET cameras sold four years ago. It otherwise is maintaining and securing (and presumably insuring) its other assets; and in so doing, it makes payroll for its few employees. Positron has no available capital and at present has no business to restructure or reorganize. To contend, as it does, that its "nerve center" is in Westmont, Illinois, is saying very little.

The second point that is telling is that the only assets of real significance and importance are the equipment and radioactive materials maintained and held by MIT at the Lubbock facility. While MIT is ostensibly a separate, stand-alone entity, it is wholly owned by Positron, and Positron makes all the payments associated with MIT's maintenance of the warehouse and the radioactive material. The most critical aspect of Positron's existence is its affiliation with and ownership of MIT. *If* relief is granted here upon trial of the involuntary petition, the maintenance and likely disposition of the radioactive material will be the most important part of Positron's administration in bankruptcy. And retaining the Court's Lubbock Division venue best addresses the concerns of affected parties. Such concerns, coupled with Positron's present status, trumps all other factors on the venue question.

It is, therefore,

ORDERED that venue shall remain with the Court, in the Lubbock Division, and all relief requested by Positron's motion is denied.

### End of Memorandum Opinion and Order ###