

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed August 25, 2016**

**United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| POSITRON CORPORATION, | § | Case No.: 15-50205-RLJ-11 |
| | § | |
| Alleged Debtor. | § | |
| | § | |

## MEMORANDUM OPINION

This is an involuntary bankruptcy proceeding in which, after a day of trial on the contested involuntary petition, the parties—the alleged debtor, Positron Corporation, and the petitioning creditors (DX, LLC, Jason and Suzanne Kitten, Moress, LLC, and Posi-Med, LLC)— announced that they had reached a settlement that would culminate in a dismissal of the involuntary case. The parties filed the *Joint Motion to Approve Agreed Structured Dismissal Pursuant to Bankruptcy Rule 9019* [Doc. No. 83]. Cecil O'Brate was joined as a party to the agreement. O'Brate is the single largest shareholder of Positron Corporation and is the sole

owner of petitioning creditor DX, LLC. Tradex Global Advisers, LLC (Tradex), which asserts an unsecured claim of $1,917,000, opposes the motion.[1]

The Court has jurisdiction over this motion under 28 U.S.C. §§ 157(a) and 1334(b). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

## I.

As reflected in the title of the motion, the agreement is labelled a "Structured Dismissal Agreement"; it provides as follows:

- Positron will purchase all shares of stock of Positron that are owned by Cecil O'Brate for the sum of $100,000. (O'Brate, as stated above, is the sole owner of DX, LLC, one of the petitioning creditors, and is the single largest shareholder of Positron, holding approximately 23% of the issued and outstanding shares of Positron. O'Brate is also a close friend of petitioning creditors Jason and Suzanne Kitten. O'Brate has invested in excess of $3.7 million in Positron.) Positron will pay for the shares by issuing a $100,000 promissory note that is payable at 4.5% interest in twelve monthly installments of $8,537.85 each. The note will be secured by the Positron shares that are subject of the conveyance (i.e., the acquired shares will be pledged back to O'Brate).

- Positron will arrange to convey either all the assets of Manhattan Isotope Technologies, LLC (MIT) or all membership interests of MIT "to a company and/or entity designated by DX, LLC" (and thus through O'Brate as its owner). *Joint Motion to Approve Agreed Structured Dismissal Pursuant to Bankruptcy Rule 9019* [Doc. No. 83], Ex. A ¶ 2.b. MIT is wholly owned by Positron. The assets include the "Strontium Portfolio, all intellectual property (patents, licenses and knowhow) related to the strontium generator recycling technology and the Rb metal technology license and the drug master file, and personal property located in the Lubbock, Texas, facility currently leased by MIT." *Id.*

- In exchange for the conveyance of MIT's assets or membership interests, the obligations under a promissory note and related guarantees and security interests presently held by DX, LLC (and that it acquired from Los Alamos National Bank) will be discharged. The current indebtedness under this note is approximately $452,000.00. (MIT is the maker of the note with Positron and the Kittens serving as

---

[1] Two other parties filed objections, as well. J&S&G Properties, LLC, the lessor of Positron's Lubbock facility, objected but then withdrew it prior to the hearing. The other objection was filed by a pro se stockholder of Positron, Brenda Mullin. Ms. Mullin submitted a March 2014 affidavit of Jason Kitten in support of her objection. She believes that Positron is giving up significant value under the settlement. Ms. Mullin's objection was made by a letter to the Court; she did not appear herself or through counsel at the hearing.

guarantors. The obligated parties likewise pledged essentially all their respective assets to secure their respective obligations.)

- Positron will use its best efforts to sell an office condominium at 530 Oakmont Lane, Westmont, Illinois, with the net proceeds distributed "in the order of priority established by the Bankruptcy Code to holders of administrative claims and the allowed claims of unsecured creditors." *Id.* ¶ 2.e. Administrative claims may not exceed 50% of the sales price. *Id.*

- The claims of the petitioning creditors, the Kittens ($52,695.14), Moress, LLC ($10,000.00), and Posi-Med, LLC ($20,646.12), are recognized as valid and thus not subject to dispute as was asserted in response to the involuntary petition. And such claims will receive their pro-rata share of the proceeds from the sale of the Westmont condo.

- Unsecured creditors of Positron may, in effect, choose to opt in or not to the proposed distribution to unsecured creditors: the agreement provides that "any unsecured creditors who do not desire to release their claim in exchange for their pro-rata share of distributions paid to unsecured creditors may opt out of this agreement and pursue such other remedies to collect their indebtedness as may be available to them." *Id.* ¶ 2.h.

Of significance to the Court's consideration of whether to approve the agreement or not, the agreement provides that if the motion is denied for any reason or if the Court "determines that Positron has materially breached the terms of the Structured Dismissal Agreement, Positron will file a voluntary Chapter 11 bankruptcy petition or a motion to convert this case to a voluntary Chapter 11 case" within ten days of denial of the motion or a determination made that Positron has breached the agreement. *Id.* ¶ 2.i. Finally, the agreement provides that upon "completion of all terms included in the Agreement for Structured Dismissal, the Petitioning Creditors and Positron shall prepare and file a Joint Motion to Dismiss the Involuntary Petition." *Id.* ¶ 2.j.

## II.

### A.

This has been a hotly contested involuntary proceeding. The Court has previously issued its *Memorandum Opinion and Order* on Positron's motion seeking dismissal of the involuntary proceeding for improper venue or, alternatively, transfer of venue to the Northern District of Illinois. In denying such request, the Court arrived at certain conclusions regarding Positron. The Court said that "Positron is, to say the least, a troubled enterprise" and that its "business plan ha[d] thus far failed." *Memorandum Opinion and Order* [Doc. No. 32] at 3, 4. It had lost over $9 million in the three years prior to the involuntary petition, including over $900,000 in the first six months of 2015. *Id*. at 4. Positron has never operated at a profit and its business consists of a "few service contracts." *Id*. MIT, which is wholly owned by Positron, leases a warehouse facility where it presently maintains an inventory of radioactive material. *Id*. at 5. At the hearing on the motion to transfer venue, the evidence revealed that it would cost as much as $500,000 to close down the Lubbock facility and properly remove the material. *Id*. The only tangible asset of Positron is the office condominium in Westmont, Illinois, which is what is being proposed to be sold under the terms of the settlement here. *Id*. at 7. Positron has no apparent available capital and has no business to restructure or reorganize. *Id*. at 8. It also has the problem of maintaining and potentially disposing of the radioactive material that would constitute the most critical aspect of Positron's administration in bankruptcy. *Id*.

### B.

Given Positron's problems, there is much to recommend the proposed settlement here. Positron's liability of over $450,000 on the note held by DX, LLC (acquired from the Los Alamos National Bank) would be extinguished; Mr. O'Brate, who is clearly adverse to

Positron's management, would be bought out; and, despite relinquishing the potential value of MIT, such as it is, Positron would rid itself of MIT's potential problems. At present, MIT's problems appear to outweigh its potential.[2] The settlement provides that the one tangible asset of Positron, the condominium in Illinois, would be liquidated with proceeds disbursed in an orderly fashion to creditors, including the petitioning creditors whose claims (which had been disputed) are acknowledged.[3]

## C.

Of particular significance here is that the proposed settlement was reached during the trial on the involuntary petition. No order for relief has been entered. This case is still postured as a contested involuntary proceeding—it is a *pending lawsuit* on whether Positron should be adjudicated as a debtor under chapter 11 of the Bankruptcy Code. *See* 11 U.S.C § 303(h). Section 303(j) provides, as relevant here, that the court may dismiss an involuntary petition if all petitioners and the debtor consent, but "[o]nly after notice to all creditors and a hearing." 11 U.S.C § 303(j). "[T]he notice provisions of [what is now § 303(j)] were designed to prevent injurious settlements and to protect the estate for creditors other than those who brought the petition." *Wynne v. Rochelle*, 385 F.2d 789, 794 (5th Cir. 1967). "[I]t is the rights of those creditors not a party to the original proceeding that the section was intended to protect, and in whose interest it should be construed." *Id.* at 795 n.6. The legislative notes make it clear that "[t]he purpose of the subsection is to prevent collusive settlements among the debtor and the petitioning creditors while other creditors [] that wish to see relief ordered with respect to the

---

[2] The objection of stockholder Brenda Mullin is based on her concern that Positron, by the settlement, is giving up the potential value of MIT's assets. The affidavit that supports her objection is dated and is not relevant to Positron's (or MIT's) current condition.

[3] Tradex's unsecured claim is based in part on the alleged fraudulent transfer of the office condo *to Positron* by Positron's former CEO, Patrick Rooney, against whom Tradex holds judgment.

debtor but that did not participate in the case [] are left without sufficient protection." H.R. Rep. No. 95-595, at 324 (1977); S. Rep. No. 95-989 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6370. So, if upon notice no objection is filed and the court finds nothing untoward with the proposed dismissal, dismissal should be approved. But here, Tradex, as an asserted creditor of Positron—but not a petitioning creditor—responded to the notice and objects on the grounds that the proposed settlement impermissibly dodges the requirements of the Bankruptcy Code, particularly the provisions of chapter 11 of the Code.

## D.

The proposed settlement does not truly provide for an immediate dismissal of the case. It is, as it is aptly described, a "structured dismissal"—the dismissal occurs only after the settlement terms are effected. This constitutes an improper *sub rosa* plan, according to Tradex. Structured dismissals are often used in *pending bankruptcy cases*, which has stirred controversy. The Bankruptcy Code does not expressly authorize structured dismissals: a chapter 11 debtor exits bankruptcy through confirmation of a chapter 11 plan, conversion to chapter 7 (liquidation), or by dismissal.[4] A structured dismissal—a settlement that results in dismissal—can have the effect of avoiding the procedural and substantive requirements involved in prosecuting a chapter 11 plan. They therefore have recently "emerged as a cost-effective exit strategy from Chapter 11 bankruptcy." Richard A. Bixter, Jr., *Structured Dismissals: Saving Time and Money in Corporate Bankrutpcy*, JNL. OF BANKR. L. 2016.06-3 (2016). And they have curried favor with some courts because they "facilitate efficient case resolutions"[5] and often represent "the least bad

---

[4] *See* 11 U.S.C. §§ 1112 and 1121–1129.

[5] American Bankruptcy Institute Commission to Study the Reform of Chapter 11, 2012–2014 Final Report and Recommendations 271 (2014) (hereinafter, "ABI Report").

alternative" when neither confirmation nor conversion to chapter 7 would benefit creditors.  *In re Jevic Holding Corp.*, 787 F.3d 173, 185 (3d Cir. 2015).[6]  Statutory support requires a broad reading of various Code sections, either standing alone or in combination.  *See, e.g.*, Amir Shachmurove, *Another Way Out: Structured Dismissals in Jevic's Wake*, 2015 NO. 11 NORTON BANKR. L. ADVISER NL 1 (referencing use of §§ 105, 305, 349, and 1112 as bases).  As such, "controversy dogs the structured dismissal." *Id.*  Its critics include U.S. Trustees,[7] the American Bankruptcy Institute,[8] and the U.S. Solicitor General.[9]

## III.

Tradex's objections highlight the procedural and substantive traps that can arise with structured dismissals: they raise the applicability and potential violation of the absolute priority rule (§ 1129(b)) with the proposed redemption of O'Brate's interests in Positron, as well as *sub rosa* concerns with the lack of any articulated structure for assessing, addressing, and making payments on claims of asserted creditors.

There is support for structured dismissals in a pending case, i.e., a case in which the order for relief has been entered (*see* 11 U.S.C. §§ 301 and 303(h)).  But the issue here is more basic. The question is whether the Court can approve the settlement within the context of an involuntary proceeding.  The requirements for chapter 11, and for that matter chapter 7, arguably do not come into play.  Within the context of an involuntary case, the Bankruptcy Code provides

---

[6] See the Supreme Court's grant of the petition for a writ of certiorari in *Jevic*, *cert. granted sub nom. Czyzewski v. Jevic Holding Corp.*, 136 S. Ct. 2541 (2016), to answer the question of whether, through a structured dismissal, the court can approve a distribution of the estate in contravention of the Code's priority scheme.

[7] *See, e.g., In re Buffet Partners, L.P.*, No. 14-30699-HDH-11, 2014 WL 3735804, at *4 (Bankr. N.D. Tex. July 28, 2014).

[8] ABI Report at 272–73.

[9] Brief for the United States as Amicus Curiae, *Czyzewski v. Jevic Holding Corp.*, No. 15-649.

only for the granting of relief or dismissal; it does not provide for an indefinite, ill-defined procedure under which a court retains the case while the parties carry-out their agreement. A court must resolve a contested involuntary proceeding "at the *earliest practicable time* and forthwith enter an order for relief, dismiss the petition, or enter any other appropriate order." Fed. R. Bankr. P. 1013(a) (emphasis added). Courts have defined "earliest practicable time" to mean as soon as "there is sufficient information to resolve the conflict before the court." *Quinton v. Medley Mfg., Inc. (In re Medley Mfg., Inc.)*, No. 88-15002, 1989 WL 79815, at *3 (9th Cir. July 11, 1989) (quoting *Hayes v. Rewald (In re Bishop, Baldwin, Rewald, Dillingham & Wong, Inc.)*, 779 F.2d 471, 475 (9th Cir. 1985)).

As indicated, there is merit to the proposed settlement. But there is no authority under the Bankruptcy Code authorizing the type of settlement that is proposed here. The settlement does not actually provide for a dismissal. Instead, it provides that upon completion of the settlement terms, a motion to dismiss will be submitted. The Court therefore denies approval of the motion and, in accordance with the terms of the settlement agreement as a binding agreement among the parties, Positron must, within ten days, go forward under chapter 11, either under a voluntary chapter 11 petition or by its motion converting this case to a voluntary chapter 11 proceeding. The Court will issue an order.

### End of Memorandum Opinion ###